IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL INDICTMENT |
| | : | NO. 1:19-CR-508-AT-LTW |
| EDWIN GENARO RIVERA DERAS, | : | |
| and HUMBERTO GOMEZ | : | |
| VALDOVINOS, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

Presently before the Court is the Magistrate Judge's Final Report and Recommendation ("R&R") [Doc. 65] recommending the denial of Defendants' motions to suppress evidence and statements. (Docs. 37, 38, 39, 40, 41.)[1] Defendant Rivera Deras has filed objections (Doc. 67), challenging the Magistrate Judge's findings that the relevant search warrants for the apartment and cell phones were supported by probable cause. Defendant Rivera Deras also challenges the Magistrate Judge's determination that any statements he provided were voluntary and in compliance with *Miranda*. Defendant Gomez Valdovinos also filed objections (Doc. 68) challenging the search warrants, but does not challenge the R&R's conclusions related to his motion to suppress statements.

---

[1] The R&R recommends that Defendant Rivera Deras' Motion to Suppress evidence recovered from a vehicle (Doc. 38) be denied as moot because the Government has represented that it will not use any evidence recovered from the vehicle. (R&R at n. 6.) The Court **ADOPTS** this finding. *subject to the Government's representation,* and therefore Defendant Deras' Motion to Suppress [Doc. 38] is **DENIED AS MOOT**.

For the reasons below, the Court **ADOPTS** the R&R [Doc. 65] and **DENIES** Defendants' motions to suppress.

## I.  Legal Standard

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a de novo basis and any non-objected portion on a "clearly erroneous" standard. Accordingly, the Court has reviewed the Defendants' motions on a de novo basis as Defendants' objections go to the essence of the Magistrate Judge's evidentiary and legal analysis.

## II. Background and Findings of the R&R

The Court adopts the factual findings of the R&R but provides a brief background here for context. In 2019, the Georgia Bureau of Investigations ("GBI") received information through a confidential informant who told the GBI that an incarcerated individual named Rodolfo Ortiz was using a contraband cell phone to facilitate methamphetamine drug transactions. (R&R, Doc. 65 at 2.) An undercover DEA agent spoke with Ortiz to plan a 500-gram methamphetamine deal for November 6, 2019. (*Id.* at 3.)  At this exchange, DEA agents observed two Hispanic males – later determined to be Defendants Rivera Deras and Gomez Valdovinos — approach the undercover's car and provide the undercover with a white plastic grocery bag in exchange for $2,500. (*Id.*) After the exchange, agents

followed the two individuals to an apartment complex and, after surveilling the building, determined which apartment the suspects exited from. (*Id.*) Six days later and based on this information, Magistrate Judge Janet F. King issued a search warrant to search the particular apartment for methamphetamine, bulk currency, and cell phones. (*Id.* at 2.)

Two days later, on November 14, 2019 at 6:00 a.m., DEA agents executed the search warrant for the apartment, breaching the door with a battering ram. (*Id.* at 4.) Upon entry, the agents' weapons were drawn and pointed at Defendants Rivera Deras and Gomez Valdovinos. Defendants were placed in handcuffs, after which the agents put away their weapons. (*Id.* at 4.) A search of the apartment uncovered a white plastic bag containing suspected methamphetamine, a 9mm pistol, and approximately $38,000 in cash. (*Id.* at 7.) The agents also found three cell phones, two belonging to Rivera Deras, both found in his bedroom, and one belonging to Gomez Valdovinos, found on his person. (*Id.*) Judge Linda T. Walker issued a search warrant authorizing the search of these three cell phones seized during the search of the apartment.

Returning to the events of November 14, after the agents handcuffed Defendants, Rivera Deras and Gomez Valdovinos were brought back inside to sit in the living room. (*Id.* at 5.) Approximately 30-45 minutes after agents breached the apartment, both Defendants were interviewed in Spanish by Agent Evaristo Cedeno, a native Spanish speaker.  (*Id.*) Agent Cedeno read both Defendants their *Miranda* warnings in Spanish. (*Id.* at 5-6.) His weapon was holstered

during the interview, he did not yell at Rivera Deras or Gomez Valdovinos, did not threaten them, did not coerce them, and did not deny them any basic comforts, such as food, water or a bathroom break. (*Id.*)

After conducting the *Jackson-Denno* hearing, the Magistrate Judge determined that the apartment search warrant and the cell phone search warrant were supported by probable cause (R&R at 14), that Defendants statements were voluntary (*id.* at 22), and that Defendants knowingly and intelligently waived their rights by speaking with the agents (*id.* at 26).

## III.   Defendants' Objections

### 1. The Apartment Search Warrant

As briefly described above, the agent's affidavit in support of the search warrant details that Ortiz, from Jenkins Correctional Facility, in Millen, Georgia, orchestrated multiple methamphetamine deals using a contraband phone while incarcerated. (Affidavit in Support of Apartment Search Warrant ("Search Warrant Aff."), Doc. 61-2 ¶¶ 12-16.) At the deal Ortiz had arranged for November 6, 2019[2], agents observed two suspects (later determined to be Rivera Deras and Gomez Valdovinos) approach the vehicle of an undercover DEA agent and hand the undercover agent a "white plastic grocery bag" in exchange for $2500. (*Id.* ¶ 18.) However, the affidavit does not state that the plastic grocery bag contained methamphetamine. As a result, both Defendants argue that the affidavit in

---

[2] The R&R explains that the Search Warrant Affidavit improperly listed the date as November 7, 2019, but that was clarified in the later affidavit in support of the search warrant for the cell phones. (See Cell Phone Search Warrant Affidavit, Doc. 61-4 ¶ 16.)

support of the apartment search warrant lacked probable cause because it did not state that the white plastic bag contained drugs. (Rivera Deras' Obj. at 1; Gomez Valdovinos' Obj. at 2.)

The Court finds that these objections are without merit. As the Magistrate Judge explained, the affidavit should be read as a whole, not in a vacuum or with a singular focus only on the sentence describing the exchange of the plastic bag for the money. *See*, *United States v. Reed*, 700 F.2d 638, 641 (11th Cir. 1983) ("We must [] decide whether the affidavit, read as a whole, could reasonably have provided the magistrate a sufficient basis for a finding of probable cause based on credible information."). As outlined in the probable cause section of the affidavit, there was a planned exchange of 500 grams of methamphetamine for $2,500 at 6808 Peachtree Industrial Boulevard on November 6, 2019 (Search Warrant Aff., Doc. 61-2 ¶ 16); Defendants showed up at the agreed-upon location and provided a plastic bag to the undercover agent and took from the agent $2,500 (*id.* ¶¶ 16, 18); and Defendants then immediately went to the apartment complex in question (*id.* ¶ 20), after which agents surveilled the building and determined the specific apartment Defendants later exited (*id.* ¶ 21). This information as a whole sufficiently establishes a connection between the drug transaction and the target apartment, and specifically established probable cause to believe that the proceeds from the drug transaction would be found in the target apartment.

Defendant Gomez Valdovinos also argues that the search warrant was stale because the agents did not apply for the warrant until 6 days after the agents

observed Defendants enter the apartment after the exchange, and the warrant was not executed until 8 days after the exchange. (Gomez Valdovinos Obj. at 5.)

It is a "fundamental principle of search and seizure law that information furnished in an application for a search warrant must be timely, and that probable cause must be found to exist at the time the warrant issues." *United States v. Bascaro*, 742 F.2d 1335, 1345 (11th Cir. 1984) *abrogated on other grounds by United States v. Lewis*, 492 F.3d 1219 (11th Cir. 2007). Courts review staleness challenges based on the unique facts presented, considering the maturity of the information, the nature of the suspected crimes (as discrete or as an ongoing conspiracy), the habits of the accused, the character of the items sought, and the nature and function of the premises to be searched. *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994) (internal citations omitted).

The Court concurs with the Magistrate Judge in finding that the information in the warrant was not stale. A period of eight days passed from the time of the drug exchange to the execution of the warrant. This short passage of time indicates, under the circumstances here, that the information was still fresh.[3] While the primary criminal conduct to which the warrant was directed involved the November 6 drug deal, the warrant also described that Ortiz had orchestrated multiple drug deals and that he had five drug stash locations in the metro Atlanta area, (Search Warrant Aff. ¶¶ 12-16), providing information to

---

[3] Indeed, it understandably takes the Government some time to properly compile and review the affidavit and information in support of a search warrant, to obtain approval from a magistrate judge, and to plan and prepare for the execution of the warrant.

support that this deal was not an isolated incident. Further, that the warrant was for an apartment makes it more likely that the evidence sought would still be in the apartment a week later. *United States v. Bervaldi*, 226 F.3d 1256, 1266 (11th Cir. 2000) (holding that it was reasonable for officers to believe that residency extended for at least six months) ("Residency … generally is not transitory or ephemeral, but instead endures for some length of time."); *see also, United States v. Latimore*, 2014 WL 3109183, at \*29 (N.D. Ga. July 7, 2014) (finding that information that defendant was in possession of money from drug deal, gleaned 22 days prior to execution of search warrant of residence, was not stale).[4] The Court overrules these objections.

## 2. The Cell Phone Search Warrant

Defendants first challenge the cell phone search warrant on some of the same grounds as the apartment search warrant, and for the reasons stated above, the Court finds these arguments unavailing. In addition, Defendant Rivera Deras argues that it is not necessarily true that just because Ortiz used a cell phone to facilitate drug transactions, the cell phones recovered from the apartment would contain evidence of a drug trafficking conspiracy. (Rivera Deras' Obj. at 2.)

But the affidavit in support of the cell phone search was based on more than just Ortiz' use of a contraband phone. Indeed, this affidavit relied on information: that Ortiz planned multiple methamphetamine drug transactions

---

[4] While the staleness inquiry is determined on a case-by-case basis, the Court notes that Defendants have provided no authority supporting a finding of staleness based on information that was only 8 days old, or anywhere near the time frame at issue here.

using a contraband cell phone (Cell Phone Warrant Aff., Doc. 61-4 ¶ 12); that the undercover agent contacted Ortiz by phone on November 6, 2019 after arriving at the agreed upon location for the deal (*id.* ¶ 16); and that, after this call, agents then observed Rivera Deras and Gomez Voldovinos approach the undercover and exchange a plastic grocery bag containing a crystal-like substance that field-tested positive for meth in exchange for $2500 (*id.* ¶ 18). Further, the affidavit explains that the subsequent search of the apartment uncovered a bag containing 84.1 grams of suspected methamphetamine, approximately $38,000 in cash, and a handgun. (*Id.* ¶¶ 23-25.) One cell phone was found on Gomez Valdovinos' person and the other two were found in Rivera Deras' bedroom, the same room where the majority of the $38,000 cash was found. (*Id.* ¶ 24, 27.)

Thus, taking the affidavit as a whole, the Court finds that there was sufficient information — including the locations where the phones were found and the common-sense conclusion that Ortiz communicated the location of the November 6 deal with Defendants through these phones — to establish a fair probability that the cell phones contained evidence of drug trafficking. Finally, as detailed by the Magistrate Judge, even if either the apartment warrant or cell phone warrant lacked probable cause, the *Leon* good faith exception would apply, precluding the exclusion of the evidence. *United States v. Leon*, 468 U.S. 897 (1984). These objections are overruled.

### 3. Rivera Deras' Statements

Defendant Rivera Deras objects to the Magistrate Judge's conclusion that his statements were made voluntarily and in compliance with *Miranda*. (Rivera Deras' Obj. at 2-4.)[5] Rivera Deras argues first that the agents' testimony was inconsistent and therefore not credible. For the reasons stated by the Magistrate Judge – namely, that the few minor inconsistencies have no bearing on the voluntariness inquiry — the Court finds that the information provided by the agents was credible.

Next, Rivera Deras argues that the Magistrate Judge erred in finding that his statements were voluntary, considering the agents' forceful entry into the apartment and Mr. Rivera Deras' background as a Spanish-speaker with an uncertain educational background. (Rivera Deras' Obj. at 4.) It is true that the agents' entry into the apartment involved drawn weapons and the use of a battering ram. But the interview of Mr. Rivera Deras took place 30-45 minutes later and was only a few minutes long. In addition, all of the officers' weapons were holstered, Agent Cedeno did not raise his voice when interviewing Rivera Deras, and Mr. Rivera Deras was not deprived of any comforts or requests. (R&R at 22.) Defendant Rivera Deras has not identified any behavior evidencing coercive police conduct in connection with his interview. Additionally, Mr. Rivera Deras does not dispute that he was interviewed in Spanish, that Agent Cedeno

---

[5] Defendant Gomez Valdovinos does not object to the Magistrate Judge's recommendation that his statements were made voluntarily and in compliance with *Miranda* but reserves his right to address the motion to suppress statements on appeal, if necessary. (Gomez Valdovinos' Obj. at n. 1.) The Court reviews this finding for clear error and finds none.

read and explained to him his rights, and that he verbally indicated that he understood all of the rights described.  Under the circumstances, there is nothing in the record to support that Defendant Deras' statements were involuntary or that they did not comport with the requirements under *Miranda*.

## IV.    Conclusion

For the reasons stated above, the Court finds that the Magistrate Judge properly analyzed the facts and legal issues presented by Defendants' motions and correctly recommended denial of said motions. Accordingly, the Court **ADOPTS** the R&R [Doc. 65]. Defendants' motions to suppress [Docs.  37, 38, 39, 40, 41] are **DENIED**.

The Court hereby sets the above case for trial beginning on Monday, November 29, 2021, at 9:30 AM in Courtroom 2308.  The pretrial conference is set for Wednesday, November 17, 2021, at 10:30 AM in Courtroom 2308. Defendants are required to attend the pretrial conference or present a written waiver of their attendance. By 5:00 PM on Tuesday, October 26, 2021, the parties are to file any motions in limine and proposed voir dire questions. By 5:00 PM on Tuesday, October 26, 2021, the Government is to file a summary of the indictment for use in voir dire.  By 5:00 PM Tuesday, November 9, 2021, the parties are to file any objections to those items listed above.  The time from June 14, 2021, to November 29, 2021, shall be excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).

The parties should be prepared to provide the Courtroom Deputy Clerk with three (3) copies of your respective exhibit and witness lists at the start of trial for use by the Judge, Court Reporter, and Courtroom Deputy Clerk.  Each party should also provide a courtesy copy of all exhibits for the Judge's use during trial, preferably in an appropriately labeled notebook provided on the first day of trial.  The parties are referred to Local Rule 16.4(B)(19)(b), NDGa, concerning the pre-marking of exhibits.  The parties <u>must</u> provide a courtesy copy of any documents e-filed just prior to trial or on any day during the course of the trial.

Please refer to Judge Totenberg's Guidelines to Parties and Counsel at http://www.gand.uscourts.gov/case-prep-judge-totenberg for information regarding the pretrial conference, voir dire, and courtroom technology.  Any training or trial runs regarding the courtroom technology must be scheduled in advance of trial via the Courtroom Deputy Clerk.  The Court will not allow time for training or trial runs at the beginning of the trial. Any motions requesting leave to bring technology into the courtroom must be filed no later than three (3) days in advance of trial, to allow time for proper notification to the US Marshals Service.

**IT IS SO ORDERED** this 14th day of June, 2021.

AMY TOTENBERG
**UNITED STATES DISTRICT JUDGE**